3 N.Y.2d 615 (1958)
Self Service Super Market, Inc., Respondent,
v.
Benjamin Harris et al., Appellants.
Court of Appeals of the State of New York.
Submitted October 9, 1957.
Decided January 23, 1958.
Hyman R. Friedman and Karl Propper for appellants.
Louis Susman for respondent.
Chief Judge CONWAY and Judges DESMOND, DYE, FULD and FROESSEL concur with Judge VAN VOORHIS; Judge BURKE dissents in an opinion.
*617 VAN VOORHIS, J.
December 1, 1941, the landlord's predecessor in interest leased store space to the tenant's assignor at 22-24 East 170th Street in The Bronx, for five years at an annual rental of $11,000 payable monthly. Defendant entered into possession as assignee prior to the expiration of this lease, and after its expiration on November 30, 1946 continued in *618 possession as a statutory tenant. On December 29, 1949 the landlord notified defendant that it had entered into a 21-year lease with Jacques d'Assail commencing February 1, 1950, at annual rentals of $16,500 for the first six years, $17,000 for the next nine years, and $17,500 for the balance of the term. This the landlord had the right to do pursuant to subdivision (k) of section 8 of the Business Rent Law (L. 1945, ch. 314, as amd.) known as the "match lease" clause. This clause provides, as is well known, that a tenant may be dispossessed where a landlord accepts a bona fide offer to enter into a lease with a different prospective tenant in certain cases upon terms specified in the statute, and if the landlord offers to execute a similar lease with the tenant in possession which is rejected.
Section 8 authorizes a Municipal Court Justice to stay the issuance of a dispossess warrant under such circumstances for limited periods of time, which, in case of a final order such as this, may not be more than three months following the time of commencement of the dispossess proceeding or one month from the entry of the final order, whichever is longer. In this instance such a stay was granted under the emergency rent law by reason of circumstances affecting the tenancy until July 2, 1950. Such a stay is granted regardless of whether an appeal has been or is to be taken, and depends upon other factors than whether an appellant would be likely to succeed upon appeal. We assume that defendant's statutory tenancy was extended until the expiration of this stay on July 2, 1950, but it then terminated. Thereafter the landlord could not apply to increase the emergency rent, nor was the defendant entitled to the benefits conferred upon statutory tenants by the emergency rent laws.
The stays pending appeal which the tenant thereafter obtained under section 1443 of the Civil Practice Act did not prolong the defendant's statutory tenancy under the applicable emergency rent law, but, like stays on appeal generally, continued the de facto situation until the appellate courts could determine whether it was also de jure. In this as in other kinds of appeal, the appellant usually procures a stay at his peril in event that he is unsuccessful in the prosecution of his appeal. Here, it was ultimately decided that the landlord was entitled to the issuance of a warrant at the latest upon July 2, 1950 (303 N.Y. 868). The decision by the Court of Appeals ended all stays which had been issued pending appeal, and appellant *619 vacated the premises on April 2 and 3, 1952 under a warrant which could not have been issued earlier on account of such stays.
Section 1443 of the Civil Practice Act is contained in the article relating to summary proceedings, and is entitled "Warrants; how stayed on appeal." It provides that stays pending appeal, where the tenant holds over after the expiration of his term, must be conditioned upon payment by the tenant of "all costs and damages which the petitioner may suffer by reason of the stay herein provided for." (Italics supplied.) The appeal which this defendant took from the final dispossess order of March 2, 1950 to the Appellate Term was accompanied by a stay granted by a Justice of the Appellate Term, which recited that the stay was granted "without prejudice to landlord". On July 13, 1950 the Appellate Term reversed the Municipal Court and dismissed the landlord's petition (199 Misc. 476), but the Appellate Division reversed the Appellate Term and reinstated the final dispossess order of the Municipal Court (278 App. Div. 227). The Appellate Division granted leave to appeal to the Court of Appeals, at the instance of the tenant, and by the same order stayed removal of the tenant on condition that the tenant execute and deliver a surety company bond in the sum of $5,000 conditioned that if the final order were to be affirmed, "said tenant * * * will pay to the landlord all costs and damages which said landlord shall suffer by reason of the stay hereby granted, pursuant to Sec. 1443 of the Civil Practice Act". The Court of Appeals did affirm, as has been stated.
Stays issued pending appeal under section 1443 of the Civil Practice Act do not have the same effect as stays extending statutory tenancies pursuant to subdivision (k) of section 8 of the emergency rent law. The dissenting opinion reasons that under section 1434 of the Civil Practice Act a tenant is deemed to continue to be a statutory tenant during the life of a stay pending appeal, with the consequence that damages can never arise from the stay even if the appellate courts eventually hold that he did not possess the rights of a statutory tenant while the stay was outstanding. That would nullify the requirement of section 1443 that the tenant pay damages pending appeal in case of affirmance and make it an idle ceremony to give an appeal bond under section 1443. That section states that such *620 stays shall only be granted upon condition "that he will pay all costs and damages which the petitioner may suffer by reason of the stay herein provided for."
The existence of damage in this case is unquestioned. Appellant himself complains that the "match lease" would have required him to increase his payments of rental by 50%. There would have been a difference between the $16,500 rental in the match lease and $11,000 as the statutory rental over the period of a year and nine months during which the final dispossess order was under review. Section 1434 of the Civil Practice Act bears on its face the indication that it was not designed for statutory tenancies, inasmuch as its language refers to lease contracts expiring after the date of eviction. It was not designed to prolong a statutory tenancy but to shorten a contractual one where the tenant vacates under a warrant before the expiration of his term. Section 1434 was not designed to emasculate the requirement of section 1443 in the same chapter of the Civil Practice Act, that a tenant must undertake that he will pay all damages which may be suffered by reason of a stay pending appeal. If a tenancy could not end until a dispossess warrant issued, regardless of the affirmance of the final order, there could never be any damages by reason of a stay preventing the issuance of a warrant pending appeal. The language of section 1443 would be ineffective. A final order, subsequently affirmed, determines that the tenancy ended before the appeal was taken; but under appellant's theory the tenancy does not end until a warrant is issued, which cannot be issued without contempt while the stay is outstanding. Consequently no damages would arise from a stay even though the appellate court decides that the stay resulted in continuing the tenant in possession after his tenancy had ended. Thus section 1434 would be held to nullify this portion of section 1443, and the tenant allowed to elevate himself by lifting his own bootstraps. This is different from whether the Municipal Court Justice could prolong the statutory tenancy for a limited time by granting a stay under section 8 of the emergency rent law. That kind of a stay is granted or withheld regardless of whether an appeal is pending or contemplated. It is designed for the sort of situation where hardship would be imposed upon a tenant if he had to vacate immediately upon the entry of the final order, as, for example, where a great deal of cumbersome property *621 would have to be removed from the demised premises or the tenant exposed to other kinds of loss or serious inconvenience. That does not relate to whether the litigated questions are sufficiently uncertain to justify keeping the tenant in possession against the event that the final order might be reversed so as to render removal unnecessary. The considerations underlying the granting or withholding of these different kinds of stays are unrelated.
The case of Smith v. Feigin (276 App. Div. 531) is cited as having spawned a progeny which appellant asks be overruled on this appeal. The following excerpt from Smith v. Feigin (supra, p. 535) is cited as being especially erroneous: "Defendants were formerly statutory tenants, to be sure, but were held to be trespassers when plaintiff obtained a final dispossess order in the Municipal Court. After that they were no longer entitled to take advantage of a rent which had been held down by the Legislature through an exercise of the police power for the benefit of legitimate statutory tenants."
It is then argued that there is no basis for calling this defendant a trespasser even after the expiration of his tenure under the emergency rent laws. It is said that he could not be a trespasser while the dispossess warrant was stayed pending appeal. We hold, as has been stated, that this statutory tenancy lasted until the expiration on July 2, 1950 of the stay granted under the emergency rent law. But that stay was of a different kind from the stays pending appeal, it was prompted by different reasons, it was designed for different purposes, and, regardless of whether this tenant was technically a trespasser after July 2, 1950, his occupation of the premises after that date has been held by this court to have been without right or justification in law.
The tenant is not to be relieved in respect of money damages of the force and effect of a judgment because he is given the right to continue in occupancy while he seeks a review of the judgment that has fixed his status. It was decided on appeal that the Municipal Court was correct, that whatever his technical status may have been, he was withholding a possession to which plaintiff was entitled.
If defendant had been a statutory tenant during the pendency of the appeals, which he was held not to be, he would have been subject to possible increases in rent pursuant to the emergency *622 rent law. The landlord was not in position to invoke these provisions, however, inasmuch as appellant was not a statutory tenant. This is not the case of Colonna & Co. v. Anthony M. Meyerstein, Inc. (198 Misc. 556, affd. 278 App. Div. 588, motion for leave to appeal denied 302 N.Y. 948) where the tenant needed extra time to remove from the premises about a million dollars worth of disassembled parts of machinery owned by the United States Government. Four months' time was there allowed after the dispossess order in which to remove these disassembled parts by a stay which was granted under the emergency rent law. The stays in controversy in the case now before the court were not granted under the emergency rent law on account of any special hardship such as that presented in Colonna to enable property to be removed from the demised premises, but pursuant to section 1443 of the Civil Practice Act against the contingency that the dispossess order might be reversed on appeal.
Concerning the undertaking for the stay on appeal to the Court of Appeals the Special Term Justice said, in granting the judgment now under review: "The giving of this undertaking was no idle ceremony. It was intended to comply with section 1443 of the C. P. A. and to conform to the direction and order of the Appellate Division. It was not signed, acknowledged, approved by a justice of the Appellate Division and filed, but it was intended to secure a stay. It was treated as an appropriate and effectual instrument for that purpose. There was forebearance on the part of the plaintiff because of it. The undertaking was not an illegal one, but one founded on a good consideration. A sense of justice demands its enforcement (Goodwin v. Bunzl, 102 N. Y., 224). In Wing v. Rogers (138 N. Y., 361 at p. 366) the court said: `The defendant in this case is liable if the instrument which he executed secured for his principal the advantage and benefits which the court had in view when granting the order, and which were fairly within contemplation of the parties.' And it was further said 138 N. Y. at p. 367: `But we have a right to look at the recitals therein and the legal proceedings out of which it grew in order to determine its real consideration and conditions' (see also 11 C. J. S. Bonds, sec. 40, p. 421; Union Bank of Brooklyn v. American Bonding Co., 174 App. Div., 542)."
*623 In the instant case, the trial court found damages in the sum of $7,224.84 and this finding was unanimously affirmed by the Appellate Division. These damages were based on defendant's failure to abide by the "match lease" obligations as required by subdivision (k) of section 8 of the emergency rent law, but accrued from March 2, 1950 when the final order of dispossession was entered in the Municipal Court. We hold that they should have been computed from July 2, 1950, when the stay expired that was granted under the emergency rent law.
The circumstance that the dispossess order of the Municipal Court was reversed by the Appellate Term does not partially relieve appellant from liability, for the reason that the order of the Municipal Court was reinstated by the Appellate Division and its reinstatement affirmed by the Court of Appeals. The question is analogous to that which has been presented in actions against sureties on appeal bonds where "It is well settled that an intermediate reversal of a judgment does not discharge the surety on an appeal bond if the higher court subsequently reverses the intermediate court. (Foo Long v. American Surety Co., 146 N.Y. 251; Robinson v. Plimpton, 25 id. 484; Doolittle v. Dininny, 31 id. 350, 353; Humerton v. Hay, 65 id. 380.)" (Consolidated Ind. & Ins. Co. v. Dein, 233 App. Div. 380, 383.) The order of the Appellate Term had to be conformed, in effect, to the remittiturs from the Appellate Division and the Court of Appeals, with the same result for this purpose as though the appeal to the Appellate Term had originally been decided as it should have been.
The judgment appealed from should be modified by remanding the matter to the trial court to reassess the damages against appellant by limiting them to such as were incurred after July 2, 1950, and, as so modified, the judgment appealed from should be affirmed, without costs.
BURKE, J. (dissenting).
I dissent. The decision of the majority seems to me to be without basis in the law and contrary to public policy.
Defendant occupied store space as a statutory tenant pursuant to the Business Rent Law (L. 1945, ch. 314, as amd.) in a New York City building owned by plaintiff corporation. On December 29, 1949 plaintiff landlord offered to enter into a lease with defendant to commence February 1, 1950 assertedly on the *624 same terms and conditions contained in a provisional lease entered into between plaintiff and a third party. The lease called for an increase of approximately 50% over the emergency rent then being paid. Defendant refused to execute the proposed agreement on the ground that it was dissimilar to the one offered the third party.
Following the refusal plaintiff commenced a summary dispossess proceeding in the Municipal Court under the "match lease" provision of the emergency rent law (§ 8, subd. [k]) which provides that in specified instances the landlord's acceptance of an offer to enter into a lease with a prospective tenant and the statutory tenant's refusal to execute a similar lease constitutes grounds for dispossess. On March 2, 1950 an order was entered awarding plaintiff possession. The issuance of the warrant of dispossess, however, was stayed until July 2, 1950 by order of the Municipal Court in accordance with a then existing provision of the act (as amd. by L. 1949, ch. 535). Before the expiration of that stay defendant appealed to the Appellate Term and procured a further stay pending appeal. On July 13, 1950 the Appellate Term unanimously reversed the final order of dispossess and dismissed the summary proceeding (199 Misc. 476). Plaintiff was granted leave to appeal by the Appellate Division on October 5th of that year and on May 8, 1951, some 10 months after the Appellate Term's dismissal of the proceeding, the Appellate Division, by a 3 to 2 decision, reversed the dismissal and reinstated the order of dispossess (278 App. Div. 227). Permission to appeal to the Court of Appeals was granted by the Appellate Division on June 19, 1951. The order granting leave stayed the issuance of the warrant pursuant to section 1443 of the Civil Practice Act. This court affirmed the Appellate Division without opinion on March 13, 1952 (303 N.Y. 868). A warrant was thereupon issued, apparently for the first time on or about April 1, 1952 and on the second and third days of April defendant was removed from the premises. During all the time from February 1, 1950 to April, 1952, the statutory rent had been paid by defendant and accepted by plaintiff.
Subsequent to the Court of Appeals determination, plaintiff commenced the present suit claiming deprivation of a fair rental value over and above the statutory rent from February 1, 1950 to April 3, 1952 in the amount of $13,294.08. The lower court awarded damages finding the difference between the rental value *625 and the statutory rent for this period to be $7,224.84. This award was unanimously affirmed without opinion by the Appellate Division, which, however, certified that in its opinion the matter involved a question of law worthy of further review and granted leave to appeal here.
The award granted below was clearly erroneous insofar as it assessed damages for the period during which defendant remained on the premises pursuant to the Municipal Court stay. That stay, granted in accordance with the express provision of the emergency rent law, perpetuated the statutory tenancy until July 2, 1950 and while it had vitality defendant was required to pay no more than the prescribed emergency rent. (Colonna & Co. v. Anthony M. Meyerstein, Inc., 198 Misc. 556, affd. 278 App. Div. 588, motion for leave to appeal denied 302 N.Y. 948; see Stern v. Equitable Trust Co., 238 N.Y. 267, 269-270.)
It remains to consider on what theory liability may be imposed for defendant's occupancy after that period.
To me it seems patently anomalous to hold, as most of the cases cited by respondent suggest, that during these proceedings defendant was a trespasser. Throughout the entire time in question tenant remained on the property not without authority but by clear right of law. The authorities are in agreement that the final order in summary proceedings does not terminate the relationship of landlord and tenant but that the tenant's status is dissolved only when the warrant of dispossess issues. Where the landlord procrastinates or issuance is prevented by a court stay the relationship and its concomitants persist (Colonna & Co. v. Anthony M. Meyerstein, Inc., supra; 105 Franklin St. Corp. v. Seratoff, 284 App. Div. 262, 263; see 2 Rasch on Landlord and Tenant and Summary Proceedings, § 1479, p. 1234, and Civ. Prac. Act, § 1434). In the present case defendant removed immediately after issuance of the warrant. Plainly, it would be a contradiction in terms to assert that defendant was at one and the same time during these proceedings both a trespasser and one lawfully in possession.
The contention that liability is required by the wording of the undertaking filed in compliance with section 1443 of the Civil Practice Act is also unsatisfactory. It is argued that the language of the statute rendering the stay contingent upon payment by the tenant of "all costs and damages which the *626 petitioner may suffer by reason of the stay" dictates the damages here granted. This reasoning gives the stay and accompanying undertaking an effect it simply does not have. If no cognizable theory permits the recovery of damages it would be error to conclude that the stay operates to give such an action. The stay clearly does not purport to create a new cause of action in the respondent but is intended merely to protect against the invasion of established legal rights. Thus, if the tenant had, during the existence of the stay, defaulted in the payment of the emergency rent, the undertaking would be effective to guarantee the amount of such default. Similarly, had the tenant, out of resentment or for any other reason committed acts of destruction or waste while on the premises pursuant to the stay, respondent could look to the undertaking for indemnification against these otherwise cognizable legal harms (see dissenting opinion in Amorose v. Price, 1 A D 2d 815, 818, per FRANK, J.). But it must first be established that the deprivation claimed by the plaintiff was in fact "damage" in the legal sense that a cause of action exists for its reimbursement before the language in section 1443 has any effect. Here that has not been shown.
Were it to be conceded, moreover, that because of its language and effect the tenant is to be charged with the difference between the rental value and emergency rent for the period during which he remained on the property pursuant to the section 1443 stay, it would still leave unaccounted for a large part of the award below. From July 13, 1950 to May 8, 1951, a period of some 10 months, defendant remained on the property not pursuant to a stay but by right of the then outstanding order of the Appellate Term in his favor.
Indeed, section 1443, upon which the majority relies, applied only after the Appellate Division granted leave to appeal on June 19, 1951. Since, until then there was no Civil Practice Act stay or appeal bond involved, the case of Consolidated Ind. & Ins. Co. v. Dein (233 App. Div. 380, 383), cited by the majority, is inapposite to the present situation.
The only other basis of recovery suggested sounds in equity. Though the rationale of the few recent cases suggesting recovery in the present situation apparently proceeds on the theory of trespass (see Smith v. Feigin, 276 App. Div. 531, 535; 207-17 W. 25th St. Co. v. Blu-Strike Safety Razor Blade Co., 277 App. Div. 93, 96; *627 cf. Colonna & Co. v. Anthony M. Meyerstein, Inc., 198 Misc. 556, 560, affd. 278 App. Div. 588), this broader approach is pressed as an alternate argument. Thus it is contended that during the proceedings the landlord was not entitled to avail himself of section 4 of the Business Rent Law which permits adjustment of rents to comport with reasonable rental value and that in light of this it would be inequitable to permit the tenant the shelter of a statutory tenancy during that period. Upon scrutiny it becomes apparent that this theory is not really an alternative but merely a variation of the trespasser theory and as such untenable. Since the landlord-tenant relationship persists until the issuance of a warrant, there is no basis for the statement that before this time and after an order of dispossess the landlord is not entitled to take advantage of the rent law to have a "reasonable" rental imposed. Indeed, plaintiff here, as far as appears from the record, never even considered this possibility though nothing in the statute forbids it and the only two cases in point expressly allowed it (Matter of Astor [Harvey's Garages], 201 Misc. 31, 33; Matter of Roseben Knitting Mills v. Great Atlantic & Pacific Tea Co., 8 Misc 2d 925). If, therefore, the landlord were entitled to the benefit of the emergency rent law, as apparently it was, it would be the plainest sort of equity, by the very reasoning underlying this contention, to afford the tenant as much. Moreover, by permitting the landlord to obtain a "reasonable" rental by the procedure he has successfully pursued here, our court has in effect judicially replaced the statutory method by one it deems proper, ignoring in the process the carefully prescribed conditions and limitations that were intended by the Legislature to circumscribe that right.
One final observation is in order. The Business Rent Law is a creature of the Legislature the obvious intent and effect of which is to shelter tenants from what has been deemed an emergent and potentially oppressive economic situation. It is our function to apply the act and the public policy it embodies until such time as it is legislatively abrogated or judicially deemed unwarranted. The majority fails in that duty, it seems to me, by the conclusion reached here. Its net effect is to place upon a tenant, who finds himself in the position the present defendant is in, an onerous risk attendant upon litigation which might induce tenants to forego legal remedies otherwise available *628 for fear of the possibility of further unspecified and unpredictable damage awards as "reasonable rental" in the event of failure. Where the appeal has considerable, though insufficient merit, as in the summary proceeding in this case, it is undesirable and contrary to the legislatively decreed public policy to discourage exercise of the important right to appeal by tacking to it the threat of a cause of action such as the one given plaintiff. If plaintiff considered the emergency rent being paid unreasonably low, its recourse should have been to the Business Rent Law (§ 4) wherein the Legislature has made provision, with appropriate safeguards and limitations, for the adjustment of emergency rents.
The judgment below should be reversed and the complaint dismissed.
Judgment accordingly.